**ORIGINAL**

# In the United States Court of Federal Claims

No. 15-374 C
(Filed: June 18, 2015)

**NOT FOR PUBLICATION**

**FILED**
**JUN 1 8 2015**
**U.S. COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BYRON J. BEDELL, ) | |
| ) | Prisoner; Pro Se; 28 U.S.C. |
| Plaintiff, ) | § 1915A; 28 U.S.C. § 1915(g); |
| ) | Sua Sponte Dismissal for Failure |
| v. ) | to State a Claim Upon Which |
| ) | Relief May Be Granted |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

Byron J. Bedell, Lewisburg, Pa., pro se.

Alexis J. Echols, Trial Attorney, with whom were Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Robert E. Kirschman, Jr., Director; Brian A. Mizoguchi, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

Plaintiff, Byron Bedell, brings suit against two agencies within the United States Department of Justice, the Federal Bureau of Prisons (BOP) and the Civil Division, Torts Branch (Torts Branch) (collectively, defendants), for entry of a default judgment. Mr. Bedell is a prisoner incarcerated in the federal penitentiary in Lewisburg, Pennsylvania. He brings his claim without counsel.

Mr. Bedell's dispute centers on the fact that despite his lack of consent, he is in BOP custody. Mr. Bedell alleges his custody is the result of an act of kidnapping, and thus constitutes false imprisonment. Mr. Bedell offered each defendant the opportunity to "settle" with him by entering into a contractual agreement by which it admitted its wrongdoing and compensated him accordingly. Neither defendant replied to Mr. Bedell's unsolicited contractual agreement. Mr. Bedell now claims that defendants' silence indicated acquiescence to both his allegations of wrongdoing and his settlement requests. Given this acquiescence, Mr. Bedell asks this court to enter a default judgment

in his favor. Prior to filing this complaint, Mr. Bedell had no complaint pending in this court. Mr. Bedell seeks to have his criminal conviction vacated, to be released from federal custody, and to be paid approximately $225 million.

Mr. Bedell also filed an application to proceed in forma pauperis, which the court **GRANTS**.

The court is obliged to review any complaint "in which a prisoner seeks redress from a governmental entity," and if the court finds the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the court must dismiss the complaint. 28 U.S.C. § 1915A(a)-(b) ("Screening" statute).

Having reviewed Mr. Bedell's complaint, the court finds that it fails to state a claim for which relief may be granted. According, Mr. Bedell's complaint is **DISMISSED**.

I. Background

Mr. Bedell's complaint, together with supporting affidavits, exhibits, and copies of legal authority on which Mr. Bedell attempts to rely, totals over 110 pages. Compl., ECF No. 1. Neither Mr. Bedell's complaint, nor its supporting documents, are a model of clarity. Nonetheless, the gist of his dispute is clear.

Sometime before January 2010, Mr. Bedell was taken into federal custody, charged, tried, and convicted for an unstated felony. See Compl. 110 (Judgment, United States v. Bedell, No. 08-cr-00299 (M.D. Pa. Jan. 26, 2010)). In January 2010, Mr. Bedell was sentenced to serve 106 months in the custody of the BOP. Id.[1]

Mr. Bedell terms his custody to be a transfer or an extradition, and asserts that the BOP needed his permission to make such a transfer. Id. at 24 (citing 18 U.S.C. § 4100(b); 18 U.S.C. § 4107). As Mr. Bedell terms it, "[a] dispute has arisen between the Plaintiff and the defendant as to the validity of the United States . . . properly extraditing Plaintiff from the (Republic) asylum of the Commonwealth State Pennsylvania into U.S. custody."[2] Id. at 5, ¶ 1.

---

[1] The cited page numbers are those affixed by the court's CM/ECF system at the top of each page, as they are the only form of consistent pagination within plaintiff's complaint.

[2] It is unstated exactly where Mr. Bedell was at the time he was taken into custody on the charges that eventually led to his current incarceration. Regardless, this information is not relevant to this opinion.

2

As he never gave permission for any transfer, Mr. Bedell characterizes the BOP taking custody of him as an act of kidnapping. Id. at 2, ¶¶ 7-8. Mr. Bedell characterizes his incarceration as false imprisonment. Id. at 2, ¶ 8.

From October 2013 to October 2014, Mr. Bedell engaged in Freedom of Information Act (FOIA) correspondence with both defendants. Id. at 2, ¶ 3-6; id. at 3, ¶ 9-10; id. at 5, ¶ 4. Mr. Bedell sent FOIA requests seeking the documents by which he gave his permission for transfer to federal custody. Compl. 79, 81. Each defendant replied that it could locate no responsive documents. Id. at 80, 82.

Now in possession of a letter from each defendant allegedly confirming that he never gave the BOP permission to take him into federal custody, Mr. Bedell began his attempts to secure a settlement agreement with first the BOP, and later the Torts Branch.

In November 2013, Mr. Bedell sent his unsolicited contractual agreement to the BOP regional office in Philadelphia, Pennsylvania, by which it could admit to kidnapping and false imprisonment, and settle with him by vacating the judgment in his criminal case, releasing him from federal custody, and paying him approximately $225 million. Id. at 3, ¶ 11; id. at 31-35, 70-78. The BOP made no reply. Compl. 3, ¶ 12.

In July 2014, Mr. Bedell sent the same unsolicited contractual agreement to the Torts Branch in Washington, D.C.[3] Compl. 5, ¶ 5; id. at 12, 19-30. Mr. Bedell contacted the Torts Branch "due to the silence" of the BOP, and because he understood that it "speaks for the U.S. Dept. of Justice . . . and Federal Bureau of Prison[s]." Compl. 20.

In February to March 2015, having received no reply from the Torts Branch, Mr. Bedell followed up by sending the Torts Branch various notices of default and certificates of non-response. Compl. 6, ¶ 9; id. at 7, ¶¶ 11-12; id. at 38-66.

The unsolicited contractual agreement Mr. Bedell sent both defendants included express notice that he would interpret silence as acquiescence to both his allegations of wrong doing and to his settlement request. Compl. 3-4, ¶¶ 13-14. As he told the BOP, "[y]our failure to reply to Notice & Demand (submissions) will result in a clear understanding and assent of the minds of your agreement to pay the full amount of

---

[3] Mr. Bedell alternately refers to the U.S. Department of Justice Risk Management Section, Compl. 19, 20, and the Civil Division, Torts Branch, id. at 38, 42, 59. The correspondence Mr. Bedell received has been from the Torts Branch. Add'l Evidence 6, 10, 13, ECF No. 8. That Mr. Bedell alternately referred to other agencies within the Department of Justice is not relevant to this opinion.

3

damages being demanded . . . ." Id. at 70. Mr. Bedell provided similar notice to the Torts Branch. Compl. 27 ("Your failure to properly and timely respond is your agreement with the statements and the averments that I have made herein.").

Which brings us to Mr. Bedell's complaint in this court. On April 13, 2015, Mr. Bedell filed his complaint requesting a Rule 55 default judgment based solely on the unsolicited contractual agreement he mailed to both the BOP and the Torts Branch. Id. at 1 (citing Rule 55 of the Rules of the United States Court of Federal Claims (RCFC)); id. at 7-8, ¶¶ 13-14.

Relying on the notice he provided regarding the consequence of silence, Mr. Bedell claims each defendant "acquiesced" to both his allegations of wrongdoing and his settlement request, thus he is entitled to judgment. See Compl. 6, ¶ 7 (stating that the BOP never responded to his claim, "thereby invoking the doctrine of acquiescence"; id. at 7, ¶ 10 (claiming that as the Torts Branch failed to reply to his claims within the time allowed, it had admitted to plaintiff's "claims, the liability and the contractual agreement").

On May 15, 2015, Mr. Bedell filed an additional seventeen pages of documents in further support of his complaint. Add'l Evidence, ECF No. 8. The additional documents are primarily correspondence regarding his claim, either between Mr. Bedell and the Torts Branch, or between the BOP and the Torts Branch. The documents include no new allegations.

On June 12, 2015, defendants filed a motion to dismiss for lack of jurisdiction under Rule 12(b)(1). Def.'s Mot., ECF No. 10. Despite defendants' motion, as Mr. Bedell is a prisoner seeking redress from a governmental entity, the court is first obliged to screen his complaint under 28 U.S.C. § 1915A.

II.     Application to Proceed In Forma Pauperis

Mr. Bedell filed an application to proceed in forma pauperis, IFP Appl., ECF No. 3, and subsequently filed his trust fund account statement in support of that application, Notice of Filing, ECF No. 6. Defendant filed no response to Mr. Bedell's motion.

A prisoner is required to provide "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2).

The trust fund account statement provided by Mr. Bedell was not certified. See

Notice of Filing 2-3. Review of the two-page statement shows that it is Mr. Bedell's "Inmate Statement" printed from the prison's "TRUWEB" system.[4] On April 23, 2015, Mr. Bedell had an account balance of $11.83, which was also his six months average daily balance. Id. at 2. This court has previously accepted such a statement as an "institutional equivalent" of a certified copy of the trust fund account statement. See Spencer v. United States, 98 Fed. Cl. 349, 354 n.8 (2011).

The court is satisfied that Mr. Bedell has complied with the requirements for proceeding in forma pauperis. The court **GRANTS** Mr. Bedell's motion to proceed in forma pauperis.

III.    Legal Standard

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). Nonetheless, a pro se complaint must still "allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief" to avoid dismissal for failure to state a claim. Acceptance Ins. Cos. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

"Dismissal for failure to state a claim . . . is a decision on the merits which focuses on whether the complaint contains allegations, that, if proven, are sufficient to entitle a party to relief." Gould, Inc. v. United States, 67 F.3d 925, 929 (Fed. Cir. 1995)." In determining whether plaintiff has failed to state a claim, the court "must accept as true all the factual allegations in the complaint" and make "all reasonable inferences" in favor of the plaintiff. Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citation omitted). The court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

---

[4]    TRUWEB is an "application used by various non-financial management staff within the BOP in order to view inmate financial information contained in [Trust Fund Accounting and Commissary System (TRUFACS)]." Fed. Bureau of Prisons, Privacy Impact Assessment for the Trust Fund Network (TRUNET) 3 (2014), available at http://www.bop.gov/foia/trunet.pdf.

IV. Discussion

    A.    Rule 55 Default Judgment

Mr. Bedell asks this court to enter a default judgment in his favor under Rule 55. Compl. 1 (citing RCFC 55).

Entry of a default judgment is a two-step process. First, a party must seek entry of a default under Rule 55(a). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." RCFC 55(a). Second, after the clerk enters a default, the party seeking the default judgment "must apply to the court for a default judgment. A default judgment may be entered only if the claimant establishes a claim or right to relief by evidence that satisfies the court." RCFC 55(b)(2).

Rule 55(b), like all the court's rules, "govern[s] the procedure in the United States Court of Federal Claims in all suits." RCFC 1. And here is where Mr. Bedell's claim for a default judgment must fail. At the time he filed his complaint that is the subject of this dismissal, Mr. Bedell had no suit pending in this court.[5] The court may enter a Rule 55(b) default judgment only against a party who has failed to defend a claim <u>brought in this court</u>. It is beyond the reach of the court to enter a default judgment against a party who failed to defend itself from allegations of wrongdoing and settlement requests contained only in an unsolicited contractual agreement.

Accordingly, Mr. Bedell's claim for entry of a default judgment under Rule 55 fails to state a claim for which relief may be granted.

Construing his complaint liberally, <u>Erickson</u>, 551 U.S. at 94, the court also considers whether Mr. Bedell has stated a contract claim or a tort claim.

    B.    Existence of either an Express Contract or an Implied-in-Fact Contract

Mr. Bedell asserts that by their silence, each defendant acquiesced to the allegations in his unsolicited contractual agreement. Compl. 3-4, ¶¶ 13-14.

> In absence of a clear written contract between us, this Notice and Caveat will result in a clear understanding and <u>assent of the minds</u> of your agreement to pay the full amount of damages being demand in the attached

---

[5] Mr. Bedell later filed a second complaint against the United States Department of Justice. Complaint, <u>Bedell v. United States</u>, No. 15-522 (Fed. Cl. May 19, 2015). That suit is pending in front of another judge.

6

> Tort Claim (Standard Form 95) with the party(s)/undersigned clearly identified here. Your failure to properly and timely respond is your agreement with the statements and the averments that I have made herein.

Id. at 27 (Torts Branch) (emphasis added); id. at 70 (informing the BOP that "[y]our failure to reply to Notice & Demand (submissions) will result in a clear understanding and assent of the minds of your agreement to pay the full amount of damages being demanded . . .").

Mr. Bedell's reference to an "assent of the minds," Compl. 27, suggests an implied-in-fact contract. "An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Balt. & Ohio R.R. Co. v. United States, 261 U.S. 592, 597 (1923)).

The elements of an implied-in-fact contract are the same as those required for an express contract: (1) mutuality of intent; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) actual authority to bind the government. See Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003); Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). Regardless of the type of contract Mr. Bedell might assert exists, such contract claim fails on every element.

1.  Intent to Contract and Lack of Ambiguity in Offer and Acceptance

Mr. Bedell points to no affirmative statement or conduct on the part of either defendant that would convey its intent to contract with him. Rather, in his claim that each defendant "acquiesced" to his allegations, Mr. Bedell relies entirely on silence to show both intent to contract and acceptance. Compl. 6, ¶ 7 (BOP); id. at 7, ¶ 10 (Torts Branch).

The general rule regarding contract formation is that "silence does not, except in unusual circumstances . . . constitute acceptance of an offer to enter into a contract." Sheppard v. United States, No. 11-295C, 2011 WL 6370078, at *5 (Fed. Cl. Dec. 20, 2011) (citing Radioptics, Inc. v. United States, 621 F.2d 1113, 1121 (Ct. Cl. 1980) ("Silence may not be construed as an acceptance of an offer in the absence of special circumstances existing prior to the submission of the offer which would reasonably lead the offeror to conclude otherwise.")); see also Restatement (Second) Contracts § 69 cmt. a (1981) ("The mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak.").

While limited exceptions to this general rule exist, Mr. Bedell alleges no facts that would bring his unsolicited contractual agreement within the recognized exceptions, which are:

> (a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation[;]
> (b) Where the offeror [here, Mr. Bedell] has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree [here, defendants] in remaining silent and inactive intends to accept the offer[;and]
> (c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.

Restatement (Second) Contracts § 69 (1981).

Mr. Bedell has failed to show that either defendant intended to contract with him, and also has failed to show acceptance of his offer by either defendant.

2. Consideration

"It is often stated that the consideration required to support a promise is a detriment incurred by the promisee [here, Mr. Bedell] or a benefit received by the promisor at its request [here, defendants]." Williston on Contracts § 7:4; see also Bogley's Estate v. United States, 514 F.2d 1027, 1033 (Ct. Cl. 1975) (same). This court has previously held that because government officials lack authority to commit the government to a contract in which it receives no benefit, any detriment to a promisee, without more, is insufficient to show consideration. "Additionally, in the context of government contracts this court has held that consideration must render a benefit to the government, and not merely a detriment to the contractor; government officials do not have authority to make contracts in which no benefit flows to the government." Metzger, Shadyac & Schwarz v. United States, 12 Cl. Ct. 602, 605 (1987).

Nothing in Mr. Bedell's unsolicited contractual agreement suggests either a benefit to defendants or a detriment to Mr. Bedell. Rather, Mr. Bedell would benefit by having his criminal conviction vacated, being released from federal custody, and receiving approximately $225 million. And at Mr. Bedell's urging, the BOP in turn would admit wrongdoing on its part, and one or both defendants would be obligated to pay Mr. Bedell a very large sum of money—hardly an outcome that could be considered beneficial to either defendant.

Mr. Bedell has alleged no facts that would show consideration.

### 3. Actual Authority

Finally, a "contract with the United States also requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States." Trauma Serv. Grp., 104 F.3d at 1325; see also Doe v. United States, 100 F.3d 1576, 1584 (Fed. Cir. 1996) ("Absent actual authority on the part of the Government's agent to bind the Government in contract, no binding contract can exist . . . .").

Mr. Bedell provides no authority to support a finding that any Department of Justice employee had actual authority to vacate his criminal conviction, release him from the federal prison to which he was sentenced by a federal judge, and pay him hundreds of millions of dollars—the settlement requests included in his unsolicited contractual agreement.

As Mr. Bedell failed to allege facts sufficient to show any element of a either an express or an implied-in-fact contract, any contractual claim fails to state a claim for which relief may be granted.

### C. Kidnapping and False Imprisonment Allegations

Next, the court considers Mr. Bedell's underlying allegations of kidnapping and false imprisonment leveled against the BOP. See Compl. 2, ¶ 8. Kidnapping and false imprisonment are torts, and thus outside the jurisdiction of this court. 28 U.S.C. § 1491(a)(1) (2012); Lawson v. City of Coatesville, 42 F. Supp. 3d 664, 668 (E.D. Pa. 2014) (referring to false imprisonment as a tort); Muhammad v. Dempsey, No. 11-350, 2012 WL 983574, at *2 (M.D. Pa. Mar. 22, 2012) (referring to kidnapping as a tort).

Nonetheless, if Mr. Bedell had stated a tort claim, this court would be obliged to consider whether transfer of that claim to a district court in which it could have been brought was in the interest of justice. See 28 U.S.C. § 1631 (2012). Accordingly, the court considers whether Mr. Bedell has stated a tort claim.

Tort claims against the United States may be brought under the Federal Tort Claims Act (FTCA), through which the government waived sovereign immunity for torts committed by federal government employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1) (2012). FTCA liability is determined by the law of the state in which the alleged tort occurred. Lomando v. United States, 667 F.3d 363, 372 (3d Cir. 2011). Mr. Bedell alleges that he was taken from Pennsylvania into federal custody, Compl. 5, ¶ 1, thus any tort committed against Mr. Bedell occurred in the commonwealth of Pennsylvania. Accordingly, the court considers Pennsylvania law in

evaluating whether Mr. Bedell stated a tort claim for either kidnapping or false imprisonment.

Kidnapping is defined as "unlawfully remov[ing] another a substantial distance under the circumstances from the place where he is found." 18 Pa. Cons. Stat. Ann. § 2901(a) (2012). The elements of false imprisonment under Pennsylvania law are two-fold: (1) detention of another person (2) that is unlawful. Davila v. N. Reg'l Joint Police Bd., Nos. 13-070 & 12-070, 2014 WL 3735631, at *4 (W.D. Pa. July 28, 2014) (citing Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010)).

Mr. Bedell's sole factual allegation is that the BOP transferred him to federal custody without his permission. Compl. 5, ¶ 2. His legal argument is that under 18 U.S.C. § 4100(b) and 18 U.S.C. § 4107, his permission was necessary for this transfer. Id. Both § 4100(b) and § 4107 govern transfer of an offender from the United States to a foreign country. As Mr. Bedell makes no allegation that he was transferred outside the United States, any protections provided by § 4100(b) and § 4107 simply do not apply to him. Absent § 4100(b) and § 4107, Mr. Bedell provides no support for his contention that the BOP needed his permission to take him into federal custody, or that the lack of permission renders his custody by the BOP unlawful.

Mr. Bedell has failed to allege facts sufficient to support a claim for either kidnapping or false imprisonment, and any such claim fails to state a claim for which relief may be granted.

V.   Conclusion

The court **GRANTS** Mr. Bedell's application to proceed in forma pauperis.

Taking all Mr. Bedell's allegations to be true, and construing his complaint liberally, the court finds that Mr. Bedell has failed to state a claim for which relief may be granted.  Under 28 U.S.C. § 1915A, Mr. Bedell's complaint is **DISMISSED**.  The Clerk of Court will enter judgment for defendant.  No costs.

This dismissal is a "strike" under 28 U.S.C. § 1915(g).[6]

IT IS SO ORDERED.

PATRICIA E. CAMPBELL-SMITH
Chief Judge

---

[6]   Under 28 U.S.C. § 1915, a prisoner may not bring a civil action without payment of the court's filing fee, if "the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).  This is commonly known as the "three strikes rule."

11